AXTELL, Respondent, v. AMERICAN LIVE STOCK INSURANCE COMPANY, Appellant.

(194 N. W. 652.)

(File No. 5125.   Opinion filed July 2, 1923.)

1.  **Insurance—Contracts—Insurance on Hogs Held Effective from Date of Issuance Rather Than from Date of Auction Sale Provided for in Contract.**

Insurance contract on hogs to be sold at acution held ambiguous as to the date it was to become effective, and therefore effective from the date of issuance rather than from date of

sale under the rule requiring the construction most favorable to
insurer.

2. **Insurance—Evidence—Evidence Held to Establish the Issuance
   of an Insurance Policy on Hogs.**

   Evidence held to establish the issuance of an insurance policy
   on hogs.

3. **Contracts—Court's Duty in Construing Instrument to Give Effect
   to Parties' Intentions.**

   In construing a written instrument, it is the duty of the court
   to carry into effect the intention of the parties.

4. **Insurance—Contracts—Acceptance—Evidence—Acceptance of Con-
   tract of Insurance Held Established; Approval in Writing Un-
   necessary.**

   Acts and conduct of an insurance company held sufficient to
   establish the acceptance of a contract of insurance, it being
   unnecessary that the contract be approved in writing.

5. **Insurance—Evidence—Admission in Evidence of Auction Sale
   Catalogue Stating Hogs Advertised Were Insured Held Not
   Error in Action on Policy.**

   In an action on an insurance policy covering certain hogs
   which were to be sold at auction, where the policy required that
   the insured print and distribute sales catalogues and state there-
   in that the hogs were insured in defendant company, held,
   that it was not error to admit in evidence a copy of such sales
   catalogues for the purpose of showing compliance with the con-
   tract.

6. **Evidence—Value—In Action on Insurance Policy Covering Hogs
   Evidence Held Admissible to Establish Value.**

   In an action on an insurance policy covering hogs, held, that
   it was not error to permit plaintiff to show value of hogs of the
   same general character and also what he had paid for similar
   hogs at about the time of the fire.

7. **Insurance—Waiver—Estoppel—Evidence—In Action on Policy,
   Acts of Defendant's Agent Seeking to Adjust Loss Thereunder
   Held Admissible.**

   In an action on an insurance policy, held, that it was not
   error to permit plaintiff to testify to a conversation had with
   defendant's secretary as to the amount of loss to be paid, since
   such acts of defendant's agent tended to establish recognition
   of the contract as showing waiver.

Appeal from Circuit Court, Moody County; Hon. John T.
Medin, Judge.

Action by Harold Axtell against the American Live Stock
Insurance Company. From a judgment for plaintiff and an order
denying a new trial, defendant appeals. Order and judgment
affirmed.

*Kennedy, Holland, DeLacy & McLaughlin,* of Omaha, Neb., and *Bates, Johnson & Simons,* of Sioux Falls, for Appellant.

*Lewis Benson* and *Rice & Rice,* all of Flandreau, for Respondent.

(1) and (3)  To points one and three of the opinion, Respondent cited:  Novotny v. Danforth, 9 S. D. 301; S. D. Rev. Code 1919, Sec. 871, Sec. 877, Sec. 874; Albers v. S. E. Mutual Life Ins. Co., 41 S. D. 270; 14 R. C. L. 926; Bowling v. Continental Ins. Co., 17 A. L. R. 376; Richards v. Standard Acci. Ins. Co., 17 A. L. R. 1183.

(4) and (7)  To points four and seven, Appellant cited: Elliott on Insurance, Sec .31; Dorman v. Conn. Fire Ins. Co., 139 Pac. 262; Shawnee Mut. Fire Ins. Co. v. McClure, 136 Pac. 1150; Handlier v. Knights of Columbus, 183 N. W. 300; Bradley v. Federal Life Ins. Co., 295 Ill. 381, 129 N. E. 171; National Union Fire Ins. Co. v. School Dist. No. Five, 122 Ark. 179, 182 S. W. 547, L. R. A. 1916D, 238; Dorman v. Conn. Fire Ins. Co., 139 Pac. 262; Van Arsdale Osborn Brothers Co. v. Young, 95 Pac. 778; Provident Sav. Life Assur. Soc. v. Elliott, 29 Ky. L. Rep. 552, 93 S. W. 659; Commonwealth Ins. Co. v. Davis, 136 Ky. 339, 124 S. W. 345; Travis v. Nederland Ins. Co., 43 C. C. A. 653; 104 Fed. 486; Alabama Gold Ins. Co. v. Mayes, 61 Ala. 163; Misselhorn v. Mutual Reserve Fund Life Asso. (C. C.), 30 Fed. 545.

Respondent cited:  Van Tassel v. Greenwich Ins. Company, 151 N. Y. 130; Robinson v. U. S. Benev. Soc., 94 N. W. 211; 14 R. C. L. 1158; 6 R. C. L. 852-53; Farmers, etc., Ins. Co. v. Chestnut, 50 Ill. 111, 99 Am. Dec. 492; 14 R. C. L. 1159-96; 14 R. C. L. 1181-1182, 1195-1196.

DILLON, J.  This case was tried to a jury and resulted in a verdict for plaintiff.  Motion for a new trial was overruled and judgment entered for plaintiff.  Defendant appeals from the order and judgment.

The contract sued upon is called "Special Hog Sale Insurance Contract," and purports to insure plaintiff's hogs against accident, including fire and lightning.

"The first party agrees to furnish the second party with a letter from the company to be read by the auctioneer at the open-

ing of said sale, said letter to be authority for the assured and the breeders assembled that said animals will be covered from the time they are knocked off at the auction block until the expiration of this contract."

The policy was issued through I. E. Locke, agent. The sale contract was issued by Clyde J. Baker, underwriter of the Omaha office. This sale contract was forwarded by the home office to plaintiff, together with a notice which was to be read by the auctioneer at the sale. It contained the statement that—

"He (Axtell) is furnishing you, absolutely free, a policy covering death from accident, and that the policy issued by the company is made in the name of the purchaser and is mailed promptly upon receipt by us of a list of purchasers. Your sow is covered by the insurance from the time you make your bid."

Paragraph 6 of the written contract of the agent provides in substance that—

"The agent shall solicit and procure applications for insurance for the company to forward the same to the home office, to thoroughly canvass by personal calls every farmer with hogs, in his territory. Inspect all hogs when the application is taken and when the policy is delivered to see that the hogs are all healthy, to deliver policies subject to instructions from the company and to make reports from time to time as to the work done."

Paragraph 9 provides that he will promptly deliver all policies issued through his applications. In case the policy is not accepted he will return the same to the company for cancellation.

On the morning of February 21st, prior to the sale, the 50 hogs so insured were destroyed by fire.

At the close of plaintiff's testimony defendant moved for a directed verdict and at the close of all of the evidence defendant renewed its motion for a directed verdict.

The 41 assignments of error will be grouped.

Was the policy sued upon a valid contract of insurance at the time the plaintiff's hogs were destroyed? Eight of these assignments present the principal question involved in this appeal, which will be considered together.

It is undisputed that the defendant treated the insurance as an existing contract from its date to the date of the loss. The insurance was on 50 head of hogs for a period of 60 days from

January 26, 1921. The contract does not say that the plaintiff is to become the insured, but that he is "the insured." It does not say that the hogs are to be insured, but that they are "insured hereunder." It provides that the insured, at the first appearance of sickness, etc., must give notice so that attention may be given to the hogs.

[1] The real question involved on this appeal is whether the insurance took effect prior to the date of the sale and was for the benefit of the party then owning the hogs, or whether it was not intended to go into effect until after the sale and was to be for the benefit of the purchaser at the sale only. The policy provides that the amount of the insurance shall be 80 per cent of the sale price of the hogs and that the premium shall be $3.50 for each $100 of insurance. This provision clearly indicates that the insurance was not to go into effect until after the sale and should be for the benefit of the purchaser only. On the other hand, the policy provides that the insurance shall go into effect on the 26th day of January, nearly three weeks prior to the date set for the sale, and it further provides that the insurance on any unsold animal shall terminate at the close of the sale, unless the owner shall apply for specific insurance. The policy also provides that in case of loss after the effective date of the contract but prior to the sale, the amount of the insurance is to be the average sale price of two or more hogs of similar class and quality. These provisions clearly indicate that the insurance was in effect from the time of the issuance of the policy. In view of these contradictory provisions, the rule which holds that insurance contracts shall be construed most strongly against the insurer must be applied and the defendant must be held liable.

Both parties complied with the terms of this contract up to the date of the loss. Plaintiff was to hold the sale letter after it had been read by the auctioneer as a guaranty to his purchasers that said animals were covered until their respective policies reached them.

[2] Plaintiff agreed in the policy to state in his catalogue of sale that the hogs were insured. The policy was forwarded by the agent to the company's office at Omaha. The agent wrote under date of February 5th inquiring if they had received it. On the 8th defendant acknowledged receipt of letter as follows:

"Will say that we received the Harold Axtell sale contract some days ago and also want to thank you for same."

On the same day, Agent Locke sent the Axtell catalogue to the company in a letter which stated:

"We hand you inclosed herewith catalogue of the Harold Axtell sale February 21st. This offer is protected by you under sale binder which I mailed you some time ago."

This letter was received some 10 days before the fire, and stated that Axtell's hogs were insured under the contract that the company had received. Clyde J. Baker, underwriter, sent the sale contract to be delivered to the plaintiff. It is clear that defendant issued the policy sued upon, the jury so found.

[3] We hold that Exhibit A was not an application, but was a completed contract of insurance. In construing written instruments it is the duty of the court to carry into effect the intention of the parties.

"The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the others." R. C. § 871.

"In accordance with the general rule, that in case of doubt a contract will be construed most strongly against the party who framed it, it may be said to be the primary rule that such contracts are to be most strongly construed against the insurer and in favor of the insured." 14 R. C. L. 926.

Insurance policies should be construed liberally in favor of the insured so as to promote, and not defeat, the purpose of the insurance.

[4] The claim that defendant did not accept the contract of insurance is not well taken. It was not necessary that the contract be approved in writing. The acts and conduct of defendant, the letters written by the defendant, conclusively established the contract sued upon. The court did not err in denying defendant's motions for judgment at the close of plaintiff's evidence, and at the close of the testimony, for under the undisputed facts proven by letters and written documents the court would have been justified in directing a verdict for the plaintiff upon every issue presented except that of negligence and the damages sustained.

[5] It was not error to admit the catalogue in evidence because the plaintiff was required to print and distribute the sale

catalogue and to state therein that the hogs were insured in defendant company. He did so and sent a copy of the catalogue to the defendant, which was received before the loss occurred. The catalogue was competent testimony, not for the purpose of establishing the market values of the hogs, but for the purpose of showing a compliance with the insurance contract.

[6] Numerous assignments are made on rulings in the admission and rejection of testimony on the value of the hogs. We have carefully examined these rulings and failed to discover any error in them. It was competent for plaintiff to show the value of the hogs, of the same general character, and also what plaintiff had paid for similar hogs at about the time of the fire. The question of damages was fairly submitted to the jury and all the evidence received was competent proof before the jury on the question of the market value of the hogs lost in the fire. There is no evidence whatever tending to show that the hog waterer was the cause of the fire. There was testimony that it was a standard article on the market and had been handled for many years and sold in large numbers and was used practically by every successful hog raiser in the country. It was not disclosed that any fire had ever been caused by one of these devices, and it cannot be said that plaintiff was negligent in using a standard article. However, this question was fairly submitted to the jury and this issue is closed by the jury.

[7] The two assignments of error on the ruling of the court in permitting plaintiff's conversation with the defendant's secretary as to the amount of loss to be paid is without merit. This evidence was given in connection with other evidence showing that the company's secretary responded promptly to the notice of the loss. He inspected the ruins of the fire, and made an appointment with the plaintiff to meet him at Flandreau to talk about the loss. All of these acts and conversation on the part of the defendant secretary constituted material evidence tending to show that the parties were claiming the validity of the policy, and such acts were competent proof of a waiver. It was a continuation of defendant's previous act treating the insurance as in full force.

The remaining assignments of error relate to the matters of arbitration and instruction to the jury, in which we find no prejudicial error.

We find in this voluminous record that no prejudicial error was committed on the trial.

The order and judgment are affirmed.

POLLEY and GATES, JJ., concur in the result.

Note.—Reported in 194 N. W. 652. See, Headnote (1), American Key-Numbered Digest, Insurance, Key-No. 175, Live Stock Insurance, 25 Cyc. 1517-1921 Anno.; (2) Insurance, Key-No. 665(2), Live Stock Insurance, 25 Cyc. 1517-1924 Anno.; (3) Contracts, Key-No. 147(1), 13 C. J. Sec. 482; (4) Insurance, Key-No. 130(3), Live Stock Insurance, 25 Cyc. 1517-1924 Anno.; (5) Insurance, Key-No. 648(1), Live Stock Insurance, 25 Cyc. 1522-1924 Anno; (6) Evidence, Key-No. 113(22), 22 C. J. Sec. 151; (7) Insurance, Key-No. 664, Live Stock Insurance, 25 Cyc. 1522-1924 Anno.

For authorities further passing on the question of application of rule that when terms of agreement have been intended in different sense, that sense is to prevail against either party, in which he had reason to suppose the other party understood it, see note in 8 L. R. A. (N. S.) 1140.